UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| World Logistics Inc. d/b/a Keystone Capacity Solutions, | : | Civil Action No. 23-4013 (MAH) |
| Plaintiff, | : | |
| v. | : | OPINION |
| Express Team Logistics, Inc., | : | |
| Defendant. | : | |

## I. INTRODUCTION

This matter comes before the Court on the motion of Plaintiff World Logistics Inc. d/b/a Keystone Capacity Solutions ("Keystone") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pl.'s Mot. for Summary Judgment, July 29, 2025, D.E. 25. Defendant Express Team Logistics, Inc. ("Express") did not oppose the motion. The motion arises from a breach of contract and negligence action in which Keystone filed suit against Express. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court considered the motion without oral argument. For the reasons set forth below, Plaintiff's motion for summary judgment is granted in part and denied in part.

## II. BACKGROUND

Keystone is a Delaware corporation with its principal place of business in New Jersey. Compl., D.E. 1, ¶ 1. It is a licensed freight brokerage company that arranges transportation services for its customers. *Id.* ¶ 5. Express is a California corporation with its principal place of business in California. *Id.* ¶ 2. It provides motor carrier transportation services. *Id.* ¶ 6.

On October 26, 2022, Keystone and Express entered into a Brokerage Agreement (the "Agreement") whereby Express would transport property for Keystone's customers. Plaintiff's

Statement of Undisputed Facts ("SUMF"), ¶ 2; Affidavit of Nicholas Bergonzi ("Bergonzi Aff."), D.E. 25-4, Ex. 1, Brokerage Agreement. In accordance with the Agreement, Express assumed full responsibility for the "care, custody, and control" of all freight from pickup through delivery. SUMF ¶ 3; Brokerage Agreement, D.E. 25-4, ¶ 15(a). The Agreement further stated that "Carrier's failure to acknowledge and respond to a cargo claim within sixty (60) days of presentation by Broker or Broker's customer will be construed as an admission of liability for that claim." SUMF ¶ 4; Brokerage Agreement ¶ 15(a). *Id.* The Agreement required Express to indemnify Keystone for any claims arising from or related to services it provided. SUMF ¶ 6; Brokerage Agreement, D.E. 25-4, ¶ 17. Finally, if Keystone prevails on a claim against Express, Keystone is entitled to reimbursement of all costs incurred in pursuing the claim against Express, including reasonable attorneys' fees and interest. SUMF ¶ 16; Brokerage Agreement, D.E. 25-4, ¶ 15(c).

In or around October 2022, Keystone entered into a contract with Express to transport a shipment of cargo for LX Pantos USA, Inc. ("LX Pantos"), one of Keystone's customers. SUMF ¶ 7. Under that contract, on October 29, 2022, Express picked up a shipment of televisions destined for Best Buy, Inc. Bergonzi Aff., D.E. 25-4, Ex. 2, Original Bill of Lading. Express's driver, Raminder Singh, signed the Bill of Lading and accepted the freight for transport using Express's Freightliner tractor, VIN 3AKJHHDR3JSJP9832. SUMF ¶ 9.

However, following delivery, Best Buy reported to LX Pantos that there had been a shortage in the shipment. SUMF ¶ 10; Bergonzi Aff., D.E. 25-4, Ex. 3 (Copy of Claim). Specifically, Best Buy reported that freight valued at $129,467.80 had been lost while in Express's custody. *Id.* Plaintiff contends, and the evidence demonstrates, that the shortage was

2

not detected during the delivery because an altered Bill of Lading had been tendered to Best Buy. SUMF ¶ 11. A copy of the altered document reflects changes to the quantity of units shipped. *Id.* ¶ 12; Bergonzi Aff., D.E. 25-4, Ex. 4, Altered Bill of Lading.

LX Pantos submitted the claim for the lost freight to Keystone, which paid LX Pantos the full amount of $129,467.80. Bergonzi Aff. ¶ 6; SUMF ¶ 13. Keystone then sought reimbursement from Express, but Express refused to pay. Bergonzi Aff. ¶ 7; SUMF ¶ 14.

On July 26, 2023, Keystone filed this lawsuit against Express for breach of contract and negligence.[1] SOUF, ¶ 15. In response to the Complaint, Express filed an Amended Answer and a Third-Party Complaint against Jaswinder Singh and 1469 Trucking Inc, seeking indemnification on the breach of contract and negligence claims.[2] *See* First Am. Answer and Third-Party Compl., D.E. 13. In its Amended Answer, Express admits that it contracted with Keystone under the Brokerage Agreement to transport freight for LX Pantos, but denies liability for the Claim. *Id.* at ¶¶ 7-8, 11–18. Discovery ensued. Pretrial Sched. Order, D.E. 17. The Undersigned conducted a settlement conference with the parties on February 11, 2025. Order, D.E. 18. Thereafter, on February 20, 2025, the parties submitted a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge pursuant to 28 U.S.C. § 636(c). Notice, D.E. 21. On April 14, 2025, the District Judge assigned to this matter at that time, Judge Cecchi, signed the consent to Magistrate Judge jurisdiction and this matter was reassigned to the Undersigned. Consent Order, D.E. 22. On July 29, 2025, Keystone filed the instant motion for

---

[1] This Court has jurisdiction over this breach of contract and negligence action pursuant to 28 U.S.C. § 1332.

[2] The Third-Party Complaint was not served. Thus, no one has appeared on behalf of the Third-Party Defendants.

summary judgment.  Mot. for Summ. J., D.E. 25.  Express has not opposed this motion and the deadline to do so has passed.

**III.    DISCUSSION**

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) states that summary judgment shall be granted when the moving party demonstrates that there is no genuine dispute regarding any material fact and that they are entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (interpreting the earlier version of the similarly worded Rule 56(c)).  A factual dispute is considered genuine if "a reasonable jury could return a verdict in favor of the nonmoving party," and it is material if the outcome of the case could be affected by the dispute under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).  When evaluating a motion for summary judgment, courts must view the evidence "in the light most favorable to the nonmoving party."  *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).  Courts are prohibited from making credibility determinations or weighing the evidence.  *See Anderson*, 477 U.S. at 255; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

Once the moving party meets its initial burden, the opposing party must then demonstrate that a genuine issue of material fact exists to avoid summary judgment.  *Celotex*, 477 U.S. at 322-23.  The nonmoving party cannot rely solely on bare allegations; it must present actual evidence that establishes a genuine factual dispute.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  On a motion for summary judgment, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing

4

that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)).

If a motion for summary judgment is unopposed, the court is not automatically required to grant it. Summary judgment is only appropriate if the facts set forth in the motion demonstrate that the movant is entitled to judgment as a matter of law. *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 176 (3d Cir. 1990). The court must independently determine whether there is no genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021); *see also* Fed. R. Civ. P. 56(e)(3). When the moving party bears the burden of proof on the relevant issues, the court must find that the facts outlined in the motion and supporting materials justify judgment as a matter of law. *Anchorage Assocs.*, 922 F.2d at 175.

Here, Express did not oppose Keystone's motion for summary judgment, and therefore did not dispute Keytone's Statement of Undisputed Material Facts. Pursuant to Local Civil Rule 56.1(a), Keystone's Statement of Undisputed Facts "shall be deemed undisputed for purposes of the summary judgment motion." Nonetheless, Keystone still bears the burden of proof on its breach of contract and negligence claims, and so Rule 56 requires this Court to examine whether Keystone has demonstrated that "on all the essential elements of its case . . . no reasonable jury could find for" Express. *In re Bressman,* 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). Thus, the Court will consider whether Keystone, based on the facts and evidence presented in its motion, is entitled to summary judgment as a matter of law on its breach of contract and negligence claims.

B.  Analysis

   1.  **Breach of Contract**

Keystone seeks summary judgment on its breach of contract claim, arguing that Express breached its agreement with Keystone by failing to: (1) deliver the entire cargo it received from LX Pantos; (2) acknowledge the cargo claim within sixty (60) days; and (3) indemnify Keystone for the claim LX Pantos brought against Keystone as a result of the missing freight.

To bring a breach of contract claim under New Jersey law,[3] a plaintiff is required to allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  Furthermore, a breach of contract claim must be supported with facts, such as specific dates as to when the breach occurred and the specific provision or provisions that were breached.  *Id.* at 204.

Keystone's motion for summary judgment includes a copy of the Brokerage Agreement entered into between Keystone and Express, the original Bill of Lading for shipment of the cargo to be delivered by Express for LX Pantos, a copy of the claim made by LX Pantos to Keystone for $129,467.80 for the lost cargo transported by Express, and a copy of the altered Bill of Lading for shipment of the cargo delivered by Express for LX Pantos.  The Brokerage Agreement stated, "[the Agreement] is entered . . . by and between [Keystone] . . . and [Express]. Brokerage Agreement, D.E. 25-4.  For Express's consideration, "[Keystone] shall cause freight to be tendered to [Express], and [Express] shall transport such freight, . . . and [Express] shall pick up, transport, deliver and provide all such services as [Keystone] shall request on all freight

---

[3]  New Jersey law applies pursuant to the Brokerage Agreement's choice of law provision.

tendered by [Keystone]." *Id.* at ¶ 1(a).  For Keystone's consideration, "[Keystone] shall pay [Express] the rates and charges applicable to the shipment."  Brokerage Agreement, D.E. 25-4, ¶ 5(a).  Express accepted Keystone's offer, selecting "Yes."  *See* Brokerage Agreement, D.E. 25-4.

The Brokerage Agreement imposed several obligations on Express.  First, Express assumed full responsibility for the "care, custody, and control" of all freight from pickup through delivery.  SUMF ¶ 3; Brokerage Agreement, D.E. 25-4, ¶ 15(a).  Second, Express was required to indemnify Keystone for any claims arising from the services that it provided to Keystone.  SUMF ¶ 6; Brokerage Agreement, D.E. 25-4, ¶ 17.  Third, the Agreement provided that if Express failed to "acknowledge and respond to" within sixty days from Keystone presenting it, that failure constituted Express's admission of liability for that claim.  SUMF ¶ 4; Brokerage Agreement ¶ 15(a).  *Id.*  Finally, Express was required to reimburse Keystone for reasonable attorneys' fees and interest if Keystone were to prevail on its claim against Express.  SUMF ¶ 16; Brokerage Agreement, D.E. 25-4, ¶ 15(c).

The undisputed material facts and evidence demonstrate that during the delivery for LX Pantos, while the goods were in Express's care, custody, and control pursuant to the Agreement, hundreds of televisions worth $129,467.80 were lost.  Bergonzi Aff., D.E. 25-4, Ex. 2, Original Bill of Lading; id. at Ex. 4, Altered Bill of Lading.  Keystone paid that amount to LX Pantos upon LX Pantos's submission of the claim to Keystone.  Bergonzi Aff. ¶ 6; SUMF, ¶ 13.  However, when Keystone sought reimbursement from Express, Express refused to pay.  Bergonzi Aff. ¶7; SUMF ¶ 14.

Viewing the evidence in the light most favorable to Express, there is no dispute that the

Brokerage Agreement constituted a contract between Keystone and Express. It is also undisputed that Keystone performed all of its obligations under the contract. Additionally, there is no genuine dispute of material fact that Express failed to perform its responsibilities under the Agreement, and that Express's breach caused Keystone damages because Express failed to indemnify or otherwise reimburse Keystone, after Keystone paid LX Pantos $129,467.80 for the cargo Express lost. Although Express denied Keystone's claims in its Amended Answer, it has not provided any evidence to support its contentions in opposition to this summary judgment motion. Because Keystone has properly supported its motion for summary judgment and Express has not come forward with any evidence to raise a general issue of material fact, summary judgment will be granted in favor of Keystone.

### 2. Negligence

Keystone also seeks summary judgment on its negligence claim. Keystone contends that Express was negligent in "failing to secure and transport the goods." Mem. in Supp., D.E. 25-1, at 5. To establish a claim of negligence, plaintiff must demonstrate: (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach proximately caused an injury that was foreseeable; and (4) Plaintiff sustained damages. *Stile v. United States*, Civ. No. 16-3832, 2019 WL 287072, at *7 (D.N.J. Jan. 22, 2019) (citing *Jersey Cent. Power & Light Co. v. Melar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013)). \

Keystone contends that Express had a duty to secure and transport the goods. Mem. in Supp., D.E. 25-1, at 5. Keystone argues that Express breached that duty after Express failed to deliver the goods. *Id.* Keystone maintains that "[t]he value of the goods is a foreseeable injury that would result from the failure to deliver the goods." *Id.* Lastly, Keystone contends that it

8

has sustained damages because Keystone paid the LX Pantos claim. *Id.* As noted above, Keystone relies on the same allegations and proofs for both its breach-of-contract claim and its negligence claim.

The Court must deny summary judgment on Keystone's negligence claim under the economic loss doctrine. New Jersey's economic loss doctrine precludes tort liability when the relationship between the parties is based solely on a contract." *Kemp. v. Est. of Brandau*, No. A-4161-19, 2022 WL 1179741, at *8 (N.J. Super. Ct. App. Div. Apr. 21, 2022). "The doctrine 'functions to eliminate recovery on a contract claim in tort claim clothing.'" *Id.* (quoting *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588-89 (D.N.J. 2014)); *see also Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) ("[A] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law."). In addition, the economic loss doctrine "bars tort claims for harm sustained to the product alone, as opposed to harm to persons or other property damage." *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 336 (D.N.J. 2010); *see also Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 270 (N.J. 1997) ("When the harm suffered is to the product itself, unaccompanied by personal injury or property damage, we concluded that principles of contract, rather than of tort law, were better suited to resolve the purchaser's claim.").

In this case, the Court finds that the economic loss doctrine precludes Keystone from recovering in tort when Keystone only alleges economic loss that may be recovered under contract. *See Duffy v. Stellantis*, No. 22-06038, 2023 WL 4601034, at *3 (D.N.J. July 18, 2023) ("Because [the p]laintiffs have alleged no harm other than economic loss that may be recovered under contract or, perhaps, warranty law, [the p]laintiff's claim for gross negligence must be

dismissed.").

## IV.    CONCLUSION

Keystone's unopposed motion for summary judgment is granted in part and denied in part.  The Court grants summary judgment in favor of Keystone on its claim for breach of contract.  However, for the reasons stated herein, Keystone's negligence claim against Express fails as a matter of law.  Judgment will be entered in favor of Keystone and against Express on Keystone's breach of contract claim in the amount of $129,467.80.  Keystone shall also recover attorney's fees and costs, as well as interest upon an application to this Court.

An appropriate Order accompanies this Opinion.

/s/Michael A. Hammer\
**United States Magistrate Judge**

**Dated:    November 10, 2025**